UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                             )
      . Plaintiff,            )
                             )
      v.                     )        Civil Action No. 10-CV-498
                             )
SILGAN CONTAINERS LLC,       )
                             )
                             )
      Defendant.             )
                             )

## CONSENT DECREE

# TABLE OF CONTENTS

I.     BACKGROUND ...................................................................................................... 1

II.    JURISDICTION AND VENUE ............................................................................... 3

III.   APPLICABILITY ................................................................................................... 3

IV.    DEFINITIONS ........................................................................................................ 4

V.     CIVIL PENALTY ................................................................................................... 8

VI.    COMPLIANCE ....................................................................................................... 9

       A.    Conversion of Can Striping Lines to Powder Side-Seam Coatings -
             Oconomowoc, Wisconsin.... ......................................................................... 9
       B.    Menomonee Falls, Wisconsin ..................................................................... 11
       C.    Application for Non-Title V Permit -- Toppenish, Washington ................. 11
       D.    Permitting For Certain Complete Corrective Measures ............................. 12
       E.    Compliance Monitoring Requirements ....................................................... 13

VII.   REQUIRED PERMIT RESTRICTIONS AND VOC REDUCTIONS ................. 13

       A.    Prohibition on Netting Credits .................................................................... 13
       B.    Retirement of Emission Reduction Credits in San Joaquin County, CA .... 14
       C.    Required Permit Restrictions and VOC Reductions ................................... 15

VIII.  REPORTING REQUIREMENTS ........................................................................ 16

IX.    STIPULATED PENALTIES ................................................................................. 19

X.     FORCE MAJEURE ............................................................................................... 23

XI.    DISPUTE RESOLUTION .................................................................................... 26

XII.   INFORMATION COLLECTION AND RETENTION ......................................... 28

XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .............................. 30

XIV.   COSTS .................................................................................................................. 32

XV.    NOTICE ................................................................................................................ 33

i

XVI.   EFFECT OF SHUTDOWN ................................................................................................35

XVII.  EFFECTIVE DATE ......................................................................................................35

XVIII. RETENTION OF JURISDICTION ..................................................................................36

XIX.  MODIFICATION............................................................................................................36

XX.    TERMINATION. ............................................................................................................36

XXI.  PUBLIC PARTICIPATION  ............................................................................................39

XXII.  INTEGRATION/APPENDICES ....................................................................................40

XXIII. SIGNATORIES/SERVICE............................................................................................40

XXIV. FINAL JUDGMENT .....................................................................................................41

Appendix I:   Instructions and Application for Retirement of Emission Reduction Credits in San Joaquin County, CA

Appendix II:  Summary of Disclosures

ii

## CONSENT DECREE

### I. BACKGROUND

Plaintiff, United States of America, on behalf of the U.S. Environmental Protection Agency, has filed a Complaint against the Defendant, Silgan Containers LLC ("Silgan" or "Defendant") for civil penalties and injunctive relief for violations of the Prevention of Significant Deterioration (PSD) provisions of the Clean Air Act (CAA), 42 U.S.C. §§ 7470-92, the New Source Review (NSR) provisions of the CAA, 42 U.S.C. §§ 7501-7515, the permitting requirements under CAA Title V, 42 U.S.C. §§ 7661-7661f, the federally approved and enforceable State Implementation Plans (SIPs) for the States of Wisconsin, New York, New Jersey, Alabama, North Carolina, Illinois, Michigan, Indiana, Minnesota, Missouri, Iowa, and the Federal Implementation Plan for the Yakama Indian Reservation, 40 C.F.R. §§ 49.11108.

Pursuant to CAA Section 113(a)(1), 42 U.S.C. § 7413(a)(1), in August and November, 2009, EPA issued to Defendant (with a copy to the applicable States and, with respect to the Toppenish Facility, the Confederated Tribes and Bands of the Yakama Nation) Notices and Findings of Violations ("NOV" and "FOV"), thereby providing notice to Defendant and the involved States and Tribes of EPA's findings of Defendant's alleged violations of the CAA and the SIPs.

The United States has provided notice of the commencement of this action to the air pollution control agencies of the involved States and Tribes, in accordance with CAA Section 113(b), 42 U.S.C. § 7413(b).

Defendant directly or indirectly leases, owns and/or operates, or formerly directly or indirectly leased, owned and/or operated, facilities ("Facility" or "Facilities") (as listed in the definition of "Facilities" in Paragraph 8) in the States identified in the first Paragraph hereof.

1

EPA recognizes the critical role of environmental auditing in protecting human health and the environment by identifying, correcting, and ultimately preventing violations of environmental laws, particularly by responsible corporate citizens.

Through an exchange of letters, Defendant and EPA entered into an Audit Agreement for Silgan facilities which reflected EPA's Audit Policy, "Incentives for Self Policing: Discovery, Disclosure, Correction and Prevention of Violations," 60 Fed. Reg. 66,706 (December 22, 1995), and Silgan commenced a national audit of its facilities' compliance with the CAA. Silgan conducted a review of each facility (a total of 28) on a region-by-region basis, between October 15, 1999 and November 29, 2004. Thereafter, Silgan disclosed certain facilities' noncompliance with the PSD and NSR provisions of the CAA, as well as other CAA requirements, and corrected noncompliance at those facilities.

Based on Defendant's representations to EPA, EPA has determined that the alleged federally enforceable civil violations identified by Defendant meet the conditions of the Audit Agreement and are appropriate for resolution.

The United States and the Defendant have agreed that settlement of this action is in the best interest of the Parties and in the public interest, have agreed on the appropriateness of various measures intended to resolve the alleged federally enforceable civil violations and have further agreed that entry of this Consent Decree without further litigation is the most appropriate means of resolving this matter.

The United States and the Defendant have consented to entry of this Consent Decree without trial of any issues.

NOW, THEREFORE, without any admission of fact or law, and without any admission of the violations alleged in the Complaint, it is hereby ORDERED AND DECREED as follows:

2

## II.  JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to

28 U.S.C. §§ 1331, 1345 and 1355; CAA Sections 113(b) and 167, 42 U.S.C. §§ 7413(b) and

7477; and over the Parties to this action.  Venue is proper in this judicial district pursuant to

28 U.S.C. §§ 1391(b) and 1395(a), and 42 U.S.C. § 7413(b).  The Complaint states claims upon

which relief may be granted against the Defendant pursuant to 42 U.S.C. § 7413(b).

2.     Solely for the purposes of this Consent Decree and the underlying Complaint, the

Defendant waives all objections and defenses that it may have to the jurisdiction of the Court or

to venue in this District.  The Defendant consents to and shall not challenge the terms of this

Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  APPLICABILITY

3.     Except as provided in Paragraph  4, the obligations of this Consent Decree apply

to and are binding upon the United States, and upon Defendant and any successors, transferees,

grantees, assigns, or other entities or persons otherwise bound by law until the Consent Decree is

terminated pursuant to Section XX (Termination).

4.     No transfer of ownership or operation of any Facility subject to Sections VI and

VII shall relieve Defendant of its obligation to ensure that the terms of the Decree are

implemented. Any attempt to transfer ownership or operation of any Facility that is subject to the

requirements of Sections VI and VII, without ensuring that the terms of the Decree are

implemented, constitutes a violation of this Decree.

5.     Defendant shall provide a copy of this Consent Decree to the plant manager of any

Facility that is subject to Sections VI and VII of this Consent Decree.  Defendant shall provide a

copy of this Consent Decree to any primary contractor retained to perform work required under

3

this Consent Decree, and shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.   In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.  DEFINITIONS

7.   Unless otherwise expressly stated, the terms used in this Consent Decree that are defined in the CAA, or in regulations promulgated thereunder, shall have the meanings set forth in such definition unless otherwise provided in this Consent Decree.

8.   Whenever the terms listed below are used in this Consent Decree, the following definitions shall apply:

"CAA" shall mean the Clean Air Act, as amended, 42 U.S.C. §§ 7401 through 7671(q).

"Audit Agreement" shall mean the exchange of letters regarding the voluntary audit agreement between Silgan and EPA in October 1999.

"Consent Decree" or "Decree" shall mean this Consent Decree and all attachments hereto, and all modifications of this Consent Decree.

"Construction Permit" shall mean a permit, issued pursuant to Wisconsin Department of Natural Resources, Chapter NR 406, to construct, modify, expand or replace an air pollution source.

"Compliance Monitoring" shall mean the requirements to measure and record the concentration and/or emission rate of pollutant(s) in the units specified in the permits identified in Paragraph 18 herein.

4

"Date of Lodging" shall mean the date that this Consent Decree is first presented to the Court.

"Day" shall mean a calendar day unless expressly stated to be a Working Day.

"Defendant" shall mean Silgan Containers LLC.

"Effective Date" shall mean the date of entry of this Consent Decree by the Court pursuant to Section XVII of this Consent Decree.

"Emission Reduction Credits" shall mean the following certificates for VOC emissions reductions issued by the San Joaquin Valley Air Pollution Control District to Silgan Containers LLC or one of its affiliates: Certificate Nos. N-187-1 (8,231 pounds/year), N-191-1 (3,615 pounds/year), C-360-1 (13,680 pounds/year), and C-359-1 (18,996 pounds/year). Such certificates total 22.26 tons of VOC emission reductions.

"Facility" or "Facilities" shall mean:

a.    Any of the following facilities that are currently leased, owned and/or operated, directly or indirectly, by Defendant Silgan Containers LLC:

Edison, New Jersey
Lyons, New York
Maxton, North Carolina
Tarrant, Alabama
Menomonee Falls, Wisconsin
Menomonie, Wisconsin
Oconomowoc, Wisconsin
Hoopeston, Illinois
Rochelle, Illinois
St. Paul, Minnesota
Plover, Wisconsin
Hammond, Indiana
St. Joseph, Missouri
Ft. Dodge, Iowa
Mt. Vernon, Missouri
Toppenish, Washington, located on the Yakama Indian Reservation; and

5

b.    Any of the following facilities that, during periods relevant to the

Complaint filed in this matter, were leased, owned and/or operated, directly or indirectly, by

Defendant Silgan Containers LLC:

Benton Harbor, Michigan
Broadview, Illinois.

"Interest" shall mean interest at the rate specified for a money judgment in a civil case

recovered in a district court pursuant to 28 U.S.C. § 1961.

"Major Nonattainment" shall mean the nonattainment area New Source Review program

within the meaning of Part D of Subchapter I of the CAA, 42 U.S.C. §§ 7510-7515, 40 C.F.R.

Part 51, and EPA-approved state implementation plans.

"New Source Review" or "NSR" shall mean the nonattainment New Source Review

program of Part D of Subchapter I of the Clean Air Act, 42 U.S.C. §§ 7501-7515, 40 C.F.R.

Part 51, and EPA-approved state implementation plans.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic number.

"Parties" shall mean the United States of America and the Defendant.

"Plaintiff" shall mean the United States of America.

"Prevention of Significant Deterioration" or "PSD" shall mean the Prevention of

Significant Deterioration program within the meaning of Part C of Subchapter I of the Clean Air

Act, 42 U.S.C. §§ 7470-7492, 40 C.F.R. Part 52, and EPA approved state implementation plans.

"Projects" shall mean the obligations contained in Paragraphs 13 (*Conversion of Can

*Striping Lines to Powder Side-Seam Coatings - Oconomowoc, Wisconsin*), 14 (*Permitting

Requirements at Oconomowoc*), 15 (*Permitting Requirements at Menomonee Falls*), 16

(*Application for Non-Title V Permit at Toppenish, Washington*), 21 (*Required Permit*

6

*Restrictions and VOC Reductions*), and 73 (*Effect of Shutdown* - when invoked to meet the obligations listed in this definition) of this Decree.

"SJVAPCD" shall mean the San Joaquin Valley Air Pollution Control District in San Joaquin, California.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"State" shall mean any state in which the Defendant directly or indirectly leases, owns, and/or operates a Facility.

"Tribe" shall mean the Confederated Tribes and Bands of the Yakama Nation.

"Unit" shall mean a piece of equipment used to manufacture a can or can component.

"United States" shall mean the United States of America, including the EPA.

"U.S. EPA" or "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"VOC" or "volatile organic compound" shall mean any compound of carbon, excluding carbon monoxide, carbon dioxide, carbonic acid, metallic carbides or carbonates, and ammonium carbonate, which participates in atmospheric photochemical reactions, and as further defined in 40 C.F.R. § 51.100(s).

"VOC Data Sheet" shall mean the report prepared by the side-seam coating manufacturer that identifies the VOC content of the coating and that is prepared in an EPA-approved format as set forth in the EPA's Emissions Standards and Engineering Division's manual entitled "Procedure for Certifying Quantity of Volatile Organic Compounds Emitted by Paint, Ink, and Other Coatings" EPA-450/3-84-019 (Dec. 1984), as revised by EPA's "Guideline for Surface Coating Calculations," EPA-340/1-86-016 (Jul. 1986), or the most recent EPA guidance.

"WDNR" shall mean the Wisconsin Department of Natural Resources.

7

"Work" shall mean all activities that the Defendant is required to perform under this Consent Decree.

"Working Day" shall mean a day other than a Saturday, Sunday or federal or state holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday or federal or state holiday, the period will run until the close of business of the next Working Day.

## V. CIVIL PENALTY

9.      Within thirty (30) days after the Effective Date of this Consent Decree, Defendant shall pay the sum of three hundred sixty-five thousand dollars ($365,000.00) as a civil penalty, together with Interest accrued from the Effective Date, at the rate specified in 28 U.S.C. § 1961 as of the Effective Date.

10.      Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer (EFT) to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following the Lodging of the Consent Decree, by the Financial Litigation Unit of the Office of the United States' Attorney for the Eastern District of Wisconsin, 530 Federal Building, 517 East Wisconsin Avenue, Milwaukee, WI 53202, (414) 297-1700. At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in this case, and shall reference the civil action number and DOJ case number 90-5-2-1-08620, to the United States in accordance with Section XV of this Decree (Notice); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

      U.S. EPA Cincinnati Finance Office
      26 Martin Luther King Drive
      Cincinnati, Ohio 45268

8

11.     Defendant shall not deduct any penalties paid under this Decree pursuant to this

Section or Section IX (Stipulated Penalties) in calculating its federal income tax.

## VI.  COMPLIANCE

A.     Conversion of Can Striping Lines to Powder Side-Seam Coatings -- Oconomowoc, Wisconsin

12.     Defendant's Facility in Oconomowoc, Wisconsin (Oconomowoc Facility)

includes three can welding process lines designated or commonly referred to as line No. 3, line

No. 4, and line No. 5. These process lines formerly and/or currently weld cans with the use of

side-seam coating applications, whereby the weld is spray coated with a liquid side-seam coating

to protect the bare steel against corrosion. This liquid side-seam coating contains VOCs that are

emitted into the air during operation of the process lines and application of the side-seam coating

on the cans. The Oconomowoc Facility is located in an area currently designated as moderate

nonattainment for ozone.

13.     Conversion of Oconomowoc Can Line Nos. 3, 4, and 5 to Powder Side-Seam Coating

a.     At can line Nos. 3, 4 and 5, Defendant shall permanently cease all liquid

side-seam coating application containing VOCs, convert to powder side-seam coating that does

not contain VOCs, and shall ensure that zero (0) emissions of VOCs occur from can line Nos. 3,

4, and 5 as a result of side-seam coating application.

i.     The requirement established in Paragraph 13.a. shall be satisfied at

can line Nos. 3 and 4 by the following dates:

(1)     For can line No. 3, not later than December 31, 2010;

(2)     For can line No. 4, not later than June 30, 2010.

9

ii.    For can line No. 5, Defendant has ceased all liquid side-seam

coating application that contains VOCs and has converted it to powder side-seam coating, which

has resulted in zero (0) emissions of VOCs from applications of side-seam coating from that can

line.

b.    In the event that a construction permit or a permit modification is required

for installing the powder side-seam coating process technology, the deadlines for meeting the

emission limitations established in Paragraph 13.a. will be extended by no longer than ninety

(90) days. Any further extension of the deadlines for meeting the emission limitations under

Paragraph 13.a. which is attributable to the need to obtain a construction permit or a permit

modification must satisfy the provisions of Section X (Force Majeure).

14.    a.    Permitting Requirements at Oconomowoc: By no later than the Effective

Date, Defendant shall submit application(s) to the WDNR for construction permits that shall

incorporate the emission limits for side-seam coating on can line Nos. 3, 4, and 5 at the

Oconomowoc Facility established in Paragraph 13.a. of this Consent Decree.

b.    Not later than six (6) months after the conversion of the last Oconomowoc

can line to powder side-seam coating, as referred to in Paragraph 13.a., Defendant shall submit to

the WDNR all necessary applications to revise the Oconomowoc Facility's Title V operating

permit and preconstruction permit(s) to incorporate the emission limits and record-keeping

requirements for the Oconomowoc Facility established in this Consent Decree.

c.    Prior to the start up of powder side-seam coating on each of line Nos. 3, 4,

and 5, Defendant shall:

10

i.         obtain a manufacturer-issued VOC Data Sheet for the powder side-

seam coating(s) used on these can lines at the Oconomowoc Facility, which demonstrates that

those coating(s) do not contain VOCs; and

ii.        maintain the manufacturer-issued VOC Data Sheet at the Facility

until the termination of document retention requirements in Section XII.

d.    If Silgan purchases and/or applies a different powder side-seam coating

formulation on can line Nos. 3, 4, or 5 before the Termination of this Consent Decree, Silgan

shall:

i.         obtain a manufacturer-issued VOC Data Sheet for that powder

side-seam coating used on these can lines, which demonstrates that those coating(s) do not

contain VOCs; and

ii.        maintain the manufacturer-issued VOC Data Sheet at the Facility

until the termination of document retention requirements in Section XII.

B.    Menomonee Falls, Wisconsin

15.    Permitting requirements:  Defendant shall submit to the WDNR all necessary

applications to revise the Menomonee Falls Facility's Title V operating permit and

preconstruction permit(s) to incorporate the emission limits for the Menomonee Falls Facility

established in Paragraph 21.a.ii. of this Consent Decree.

C.    Application for Non-Title V Permit – Toppenish, Washington

16.    a.    No later than ninety (90) days after the Effective Date, Defendant shall

submit to EPA Region 10 a complete non-Title V permit application pursuant to 40 C.F.R.

§ 49.139 and § 49.11110(k) limiting the Toppenish Facility's emissions to no more than 77.2

tons per year of VOCs, no more than 9 tons per year of any single hazardous air pollutant

11

regulated under CAA Title III, and no more than 24 tons per year combined of all hazardous air

pollutants regulated under CAA Title III. Emissions shall be calculated each month for the

previous 12-month period and as required by the permit.

        b.     Following submission of a complete permit application for the Toppenish

Facility pursuant to Paragraph 16.a., Defendant shall cooperate with EPA by submitting all

information requested by EPA within the time frame specified in EPA's request. Silgan may

seek an extension of time to respond to any request under this sub-paragraph.

D.     Permitting for Certain Completed Corrective Measures

        17.     Through the audit conducted between 1999 and 2004, Defendant identified

noncompliance, and, in response to said noncompliance, undertook the following corrective

measures, at the following Facilities, which did not result in significant emission increases:

        a.     Defendant in 2000 installed a thermal oxidizer at its Facility in Edison,

New Jersey.

        b.     Defendant in 2001 installed a permanent total enclosure/regenerative

thermal oxidizer at its Facility in Tarrant, Alabama.

        c.     Defendant in 2001 installed a permanent total enclosure/regenerative

thermal oxidizer at its Facility in St. Joseph, Missouri.

        d.     Defendant obtained permits that incorporate the above corrective measures

for the Edison, Tarrant, and St. Joseph Facilities. These permits include New Jersey Department

of Environmental Protection Permit No. 990001, Jefferson County, Alabama Department of

Health Permit No. 4-07-0135-04, and Missouri Department of Natural Resources Permit Nos.

062004-015 and 082000-012.

12

c.     On June 30, 2008, Silgan closed the Tarrant Facility. Silgan shall file an application to withdraw the operating permits for the Tarrant Facility, including Jefferson County, Alabama Department of Health Permit No. 4-07-0135-04, within 30 days of the Effective Date of this Consent Decree.

E.    Compliance Monitoring Requirements

18.    For the following Facilities, Defendant shall comply with the compliance monitoring requirements set forth in the revised permits, and submit semi-annual monitoring data to EPA as further detailed in Section VIII: i) Edison, New Jersey; ii) Oconomowoc, Wisconsin; iii) Menomonee Falls, Wisconsin; iv) St. Joseph, Missouri; and v) Toppenish, Washington.

## VII.  REQUIRED PERMIT RESTRICTIONS AND VOC REDUCTIONS

A.    Prohibition on Netting Credits

19.    a.     Defendant, in perpetuity, shall neither generate nor use any VOC emission reductions resulting from any Projects conducted pursuant to this Consent Decree as netting credits or offsets in any PSD permit, major nonattainment permit, and/or minor NSR permit or permit proceeding, unless otherwise authorized in this Consent Decree. However, nothing in this Paragraph shall be construed to limit the generation and use of emissions offsets or credits respecting VOC emission reductions that are either more stringent than the emissions limits established under the Consent Decree, or achieved from sources not covered under the Consent Decree, or respecting reductions of any other pollutant at any source for any Facility. In addition, Defendant may generate and use emissions offsets or credits respecting VOC emissions reductions pursuant to this Paragraph for the permanent shutdown of any unit or Facility and the surrender or modification of all permits for such unit or Facility only if the shutdown occurs after the completion of any Project required by this Decree related to the shutdown.

13

      b.     Nothing in this Section is intended to prohibit Silgan from seeking to utilize emissions reductions realized through any Projects conducted pursuant to this Consent Decree for a particular Facility's compliance with any rules or regulations designed to address regional haze or the nonattainment status of any area (excluding PSD and nonattainment New Source Review, but including, for example, Reasonably Available Control Technology rules and the Northeast Ozone Transport Region $NO_x$ Budget Program) that apply to the particular Facility. Notwithstanding the preceding sentence, Silgan will not trade or sell any emissions reductions for any Projects conducted pursuant to this Consent Decree.

B.     Retirement of Emissions Reduction Credits in San Joaquin County, CA

      20.    Defendant shall retire and permanently eliminate from trade or credit Emission Reduction Credits ("ERC") certificates for VOC emissions issued by the San Joaquin Valley Air Pollution Control District in San Joaquin, California (SJVAPCD) to Silgan or one of its affiliates.

      a.     No later than thirty (30) days after the Effective Date, Defendant shall submit the application for ERC Withdrawal and follow the SJVAPCD's procedures identified in Appendix I to this Consent Decree that are current as of July 1, 2009. Defendant shall indicate on its application that the reason for ERC Withdrawal (line 6) is "surrendered as a condition of settlement with United States."

      b.     In the event the SJVAPCD requires additional information or action to complete the application process, Defendant shall comply with any such request within the time frame specified by SJVAPCD or no later than forty-five (45) days after the date of such request, if no time frame is specified.

14

c.      In the event SJVAPCD is not able to retire the Emission Reduction Credits

within ninety (90) days of submission of Defendant's application, the Parties shall meet without

delay to discuss the best course of action to permanently retire the Emission Reduction Credits.

C.      Required Permit Restrictions and VOC Reductions

21.      Defendant shall take the following actions at its Menomonee Falls, Oconomowoc,

and Hoopeston Facilities:

a.              Menomonee Falls, Wisconsin Facility:

i.      Not later than six (6) months after the Effective Date, Defendant

shall take the following actions

(1)      comply with the emissions limitations identified in this sub-

paragraph; and

(2)      submit to the WDNR permit applications, including any

necessary applications to modify Title V and/or other federally enforceable state operating

permits, to reduce allowable VOC emissions from the Menomonee Falls Facility's sheet coating

department, and from the Facility's cleanup solvent use, by a combined total of 86 tons per year,

as described below.

ii.      Defendant's modified or new permit limits on the emission of

VOCs from the Menomonee Falls Facility, as required by Paragraph 15 and this sub-paragraph,

shall be imposed on the following activities:

(1)      VOC emissions limit for plant-wide cleanup solvent use

shall be reduced from 25.08 tons per year to 12 tons per year (12-month rolling basis);

(2)      VOC emissions limit for Sheet Coating Lines 1 and 2 shall

be reduced from 50.94 tons per year to 26 tons per year (12-month rolling basis); and

15

(3)     VOC emissions limit for Sheet Coating Lines 3 and 4 shall

be reduced from 77.28 tons per year to 29 tons per year (12-month rolling basis).

    b.     Oconomowoc, Wisconsin and Hoopeston, Illinois Facilities:

        i.     Not later than six (6) months after the Effective Date, Defendant

shall take the following additional actions:

(1)     permanently reduce actual emissions of VOCs at the

Oconomowoc and Hoopeston Facilities by at least a total of fourteen (14) tons per year; and

(2)     submit to the appropriate state permitting authority permit

applications, including any necessary applications to modify Title V and/or other federally

enforceable state operating permits, to reduce allowable VOC emissions from these lines as

detailed below; and ensure that the modified operating permits reflect that actual VOC emissions

from these lines are reduced as detailed below.

        ii.     The foregoing shall be accomplished by permanently ceasing

operations at end press line No. 7 at the Oconomowoc Facility and at end press line Nos. 9 and

10 at the Hoopeston Facility.

## VIII.  REPORTING REQUIREMENTS

    22.   a.     Within 30 days after the end of each semi-annual period (*i.e.*, by January

30 and July 30) until termination of this Consent Decree pursuant to Section XX (Termination),

Defendant shall submit in writing a semi-annual report for the preceding six months that shall

provide the following information: 1) the design specifications of the powder coatings system

required by Section VI, including any updates or modifications thereto; 2) a progress report on

the status of implementation of each of the requirements of Section VI above; 3) a summary of

the emissions monitoring and testing data collected as required by Section VI above during the

16

reporting period; 4) a summary of all permitting activity related to this Consent Decree, including but not limited to Sections VI, VII and XVI, for the reporting period, including permits applied for, permits issued and/or a summary of permit-related discussions with applicable permitting authorities; and 5) a description of any problems encountered or anticipated with respect to meeting the requirements of Section VI above.

      b.    All reports also shall include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

      c.    If Defendant violates, or has reason to believe that it may violate, any requirement of Sections VI or VII of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration, in writing, within twenty-one (21) days of the day that Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) days of the day that Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section X of this Consent Decree (Force Majeure).

    23.    In any periodic progress report submitted pursuant to this Section, Silgan may incorporate by reference information previously submitted under its Title V permitting requirements, provided that Silgan attaches the Title V permit report and provides a specific

17

reference to the provisions of the Title V permit report that are responsive to the information required in the periodic progress report.

24.     Whenever any violation of this Consent Decree or any other event affecting Defendant's performance of the requirements of this Decree, or the performance of the Facilities that are subject to the compliance requirements of Sections VI and VII of this Decree, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

25.     All reports shall be submitted to the persons designated in Section XV of this Consent Decree (Notice).

26.     All submissions, reports, or notices required by this Consent Decree to be submitted by the Defendant shall be certified by a corporate official who is responsible for environmental management at Silgan's Facilities, and shall be accompanied by the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

18

27.     The reporting requirements of this Consent Decree do not relieve Defendant of
any reporting obligations required by the CAA or implementing regulations, or by any other
federal, state, or local law, regulation, permit, or other requirement.

28.     Any information provided pursuant to this Consent Decree may be used by the
United States in any proceeding to enforce the provisions of this Consent Decree and as
otherwise permitted by law.

## IX.  STIPULATED PENALTIES

29.     Defendant shall be liable for stipulated penalties to the United States for
violations of this Consent Decree as specified below, unless excused under Section X (Force
Majeure). A violation includes failing to perform any obligation required by the terms of this
Decree, including any work plan or schedule approved under this Decree, according to all
applicable requirements of this Decree and within the specified time schedules established by or
approved under this Decree.

30.     Late Payment of Civil Penalty:  If Defendant fails to pay the civil penalty required
to be paid under Section V of this Decree (Civil Penalty) when due, Defendant shall pay a
stipulated penalty of $500 per day for each day that the payment is late.

31.     Defendant shall pay the following stipulated penalties per violation per day for
noncompliance with any of the requirements identified below:

19

| Consent Decree Violation | Stipulated Penalty – per day, unless otherwise specified. |
|---|---|
| a. Each failure to meet any emission limit established under Paragraph 13.a. of this Consent Decree. | $2,000 during the first 30 days, $5,000 during the next 30 days, $10,000 per day thereafter |
| b. Each failure to meet any emission limit established under Paragraphs 16.a. and 21.a. of this Consent Decree. | $1,000 during the first 30 days, $2,500 per day thereafter |
| c. Failure to timely install, commence operation, or continue operation of the powder side-seam coatings process on line Nos. 3, 4, and 5 at the Oconomowoc Facility, as required by Paragraph 13. | $2,000 during the first 30 days, $5,000 during the next 30 days, $10,000 per day thereafter |
| d. Failure to timely and permanently cease operations at end press Line No. 7 at Oconomowoc and at end press Line Nos. 9 and 10 at Hoopeston, as required by Paragraph 21.b.ii. | $2,000 during the first 30 days, $5,000 during the next 30 days, $10,000 per day thereafter |
| e. Failure to timely submit or modify any permit required by the Consent Decree. | $1,000 during the first 30 days, $5,000 during the next 30 days, $10,000 per day thereafter |
| f. Failure to timely submit application to Retire Emission Reduction Credits or submit additional information in accordance with Paragraph 20. | $1,000 during the first 30 days, $5,000 during the next 30 days, $10,000 per day thereafter |
| g. Failure to timely submit, modify, or implement, as approved, the reports, plans, studies, analyses, protocols, or other submittals required by this Consent Decree. | $1,000 during the first 30 days, |

20

| Consent Decree Violation | Stipulated Penalty - per day, unless otherwise specified. |
|---|---|
|  | $2,000 during the next 30 days, $5,000 per day thereafter |
| h. Any other violation of this Consent Decree. | $1,000 per day |

32.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

33.     Defendant shall pay any stipulated penalty within sixty (60) days of receiving the United States' written demand. A demand for the payment of stipulated penalties will identify the particular violation(s) to which the stipulated penalty relates, the stipulated penalty amount that EPA is demanding for each violation (as can be best estimated), the calculation method underlying the demand, and the ground upon which the demand is based.

34.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

35.     Stipulated penalties shall continue to accrue as provided in Paragraph 31, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) days of the effective date of the agreement or the receipt of EPA's decision or order.

21

      b.    If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) days of receiving the Court's decision or order, except as provided in Paragraph 35.c., below.

      c.    If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

    36.    Obligations Prior to the Effective Date.  Upon the Effective Date of this Consent Decree, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations of the Consent Decree that have occurred prior to the Effective Date of the Consent Decree, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

    37.    Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

    38.    If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

    39.    Subject to the provisions of Section XIII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree

22

shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of a relevant statutory or regulatory requirement, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## X. FORCE MAJEURE

40. If any event causes or may cause a delay in the Defendant's compliance with any provision of this Consent Decree, the Defendant shall notify the United States in writing as soon as practicable, but in any event within fifteen (15) days of when the Defendant first knew of the event, or should have known of the event by the exercise of due diligence. A "Force Majeure Event" is any event beyond the control of the Defendant, its contractors, or any entity controlled by the Defendant that delays the performance of any obligation under this Consent Decree despite the Defendant's best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential Force Majeure Event and addressing the effects of any such event: (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include the Defendant's financial inability to perform any obligation under this Consent Decree. In this notice, the Defendant shall specifically reference this provision of the Consent Decree and describe the anticipated length of the delay, the cause or causes of the delay, all measures taken or to be taken by the Defendant to prevent or minimize the delay, the schedule by which those measures will be implemented and the Defendant's rationale for attributing any delay to a Force Majeure Event. The Defendant shall adopt all reasonable measures to avoid and minimize such delays.

23

41.     Failure by the Defendant to materially comply with the above notice requirements shall constitute a waiver of the Defendant's right to assert Force Majeure. Notification of any delay, in and of itself, shall not extend the time allowed for meeting any requirement or excuse the delay or payment of stipulated penalties.

42.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, EPA shall extend the time for compliance with the particular requirement(s) affected by the Force Majeure by a period not exceeding the delay actually caused by such circumstances. The Defendant shall not be liable for stipulated penalties for the period of any such delay. Such an extension does not alter the schedule for any other part of this Consent Decree, except that EPA shall extend the time for performance of other tasks under this Consent Decree that EPA determines will necessarily be delayed as a result of the Force Majeure.

43.     The Parties agree that, depending upon the circumstances related to an event and the Defendant's response to such circumstances, the kinds of events listed below are among those that could qualify as Force Majeure Events within the meaning of this Section: construction, labor, or equipment delays; acts of God; and acts of war or terrorism. Depending upon the circumstances and the Defendant's response to such circumstances, failure of a permitting authority to issue a necessary permit in a timely fashion may constitute a Force Majeure Event where the failure of the permitting authority to act is beyond the control of the Defendant and the Defendant have taken all steps available to them to obtain the necessary permit, including, but not limited to, submitting a complete permit application, responding to requests for additional information by the permitting authority in a timely fashion, accepting lawful permit terms and conditions, and prosecuting in an expeditious fashion appeals of any allegedly unlawful terms and conditions imposed by the permitting authority.

24

44. If EPA does not agree with the Defendant's claim of Force Majeure, U.S. EPA's position shall be binding, unless the Defendant invokes the Dispute Resolution procedures of this Consent Decree. In any such Dispute Resolution proceeding, if the Court determines that the violation has been or will be caused solely by circumstances beyond the control of the Defendant or any entity controlled by the Defendant, including their contractors, and that best efforts were exercised to avoid and mitigate the effects of the delay, the Defendant shall be excused as to that violation and delay (including stipulated penalties), but only for the delay actually caused by such circumstances.

45. The Defendant shall bear the burden of proving that any delay of any requirement of this Consent Decree was caused or will be caused solely by circumstances beyond the control of the Defendant or any entity they control, including their contractors, and that best efforts were exercised to avoid and mitigate the effects of the delay. The Defendant shall also bear the burden of proving the duration and extent of any delay attributable to such circumstances. Absent written approval by the United States, an extension of one compliance date based on a particular event shall not of itself result in an extension of a subsequent compliance date or dates.

46. Unanticipated or increased costs or expenses associated with the performance of the Defendant's obligations under this Consent Decree shall not constitute circumstances beyond the Defendant's control, or serve as a basis for an extension of time under this Section. Temporary shutdowns for routine maintenance do not constitute circumstances beyond the Defendant's control for purposes of this Section.

25

## XI. **DISPUTE RESOLUTION**

47. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

48. Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within forty-five (45) Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

49. Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

50. The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States'

26

Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

51.    Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV of this Consent Decree (Notice), a motion requesting judicial resolution of the dispute. The motion must be filed within thirty (30) days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

52.    The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court, unless the Parties stipulate otherwise. Defendant may file a reply memorandum, to the extent permitted by the Local Rules, or the Parties' stipulation.

53.    Standard of Review

a.    Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 49 (Formal Dispute Resolution) pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

27

b.     Other Disputes. Except as otherwise provided in this Consent Decree, in

any other dispute brought under Paragraph 49 (Formal Dispute Resolution), Defendant shall bear

the burden of demonstrating that its position complies with this Consent Decree and better

furthers the objectives of the Consent Decree.

54.     The invocation of dispute resolution procedures under this Section shall not, by

itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent

Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with

respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but

payment shall be stayed pending resolution of the dispute as provided in Paragraph 35. If

Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid

as provided in Section IX (Stipulated Penalties).

## XII.  INFORMATION COLLECTION AND RETENTION

55.     The United States and its representatives, including attorneys, contractors, and

consultants, shall have the right of entry into any facility covered by this Consent Decree, at all

reasonable times, upon presentation of credentials, to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States in

accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by

Defendant or its representatives, contractors, or consultants;

d.     obtain documentary evidence, including photographs and similar data; and

e.     assess Defendant's compliance with this Consent Decree.

28

56.      Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant. Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

57.      a.      Until five (5) years after termination of this Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, and that directly relate to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

      b.      Defendant will ensure continuous compliance with Paragraphs 13.a., 14.c. and 14.d. of this Consent Decree by maintaining monthly electronic records of the type(s) and amount(s) of coatings used on can line Nos. 3, 4 and 5 at the Oconomowoc Facility. Defendant will also maintain monthly electronic records of can production on can lines Nos. 3, 4, and 5 at the Oconomowoc Facility.

58.      This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

29

59.    All information and documents Defendant submits to EPA pursuant to this

Consent Decree shall be subject to public inspection, unless Defendant identifies and supports a

claim for Confidential Business Information in accordance with 40 C.F.R. Part 2.

60.    a.    If no claim of confidentiality accompanies documents or information when

they are submitted to EPA, the public may be given access to such documents or information

without further notice in accordance with 40 C.F.R. Part 2.

b.    Nothing in this Consent Decree shall be interpreted to waive Defendant's

right to withhold documents that are subject to legal privileges or protection.

### XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

61.    This Consent Decree resolves, through the Date of Lodging, the civil claims

of the United States for the violations alleged in the Complaint filed in this action, as well as all

other federally enforceable civil violations that Silgan disclosed to the United States as a result of

its audit of its facilities.  All such violations are set forth in Appendix II (Summary of

Disclosures).  The terms of this Consent Decree with regard to certain civil claims determined to

have satisfied the terms of the Audit Agreement are expressly conditioned on the completeness,

accuracy and truth of Defendant's representations.  In the event that Defendant has made any

statements or assertions concerning its voluntary disclosure which are false in any material

respect, the resolution of claims in Paragraphs 61-68 shall be voidable by action of the United

States, except that any civil penalty or stipulated penalty payments already made by Defendant or

its designee under this Consent Decree shall be forfeited by Defendant.  The United States may

pursue all civil and criminal remedies and sanctions available to it under law on account of

Defendant's violations, including criminal prosecution for perjury or false swearing.  In the event

that the Defendant has made a nonmaterial misrepresentation or omission regarding the audit of

30

its Facilities, then the resolution of claims in Paragraphs 61-68 shall be voidable by action of the United States solely with respect to the violation to which such nonmaterial misrepresentations related, but not voidable in their entirety.

62.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 61. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 61. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

63.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Defendant's Facilities, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 61.

64.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.

65.     At all Facilities, Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits, including

31

but not limited to an order pursuant to CAA Section 303, 42 U.S.C. § 7603, and this Consent Decree shall not be construed to be a ruling on, or determination of, any issue related to any federal, state or local permit. Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.

66. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, 42 U.S.C. §§ 7401 through 7671(q), or with any other provisions of federal, state, or local laws, regulations, or permits.

67. Nothing in this Consent Decree is intended, nor shall it be construed, to operate in any way to resolve any criminal liability of the Defendant.

68. This Consent Decree shall not create any rights in, or grant any cause of action to, any party other than the Plaintiff and the Defendant. This Consent Decree does not limit or affect the rights of the Defendant or the Plaintiff against third parties who are not a party to this Consent Decree, nor shall this Consent Decree be construed to create any rights in, or grant any cause of action to, any third parties not a party to this Consent Decree.

## XIV. COSTS

69. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

32

## XV.  NOTICE

70.     Unless otherwise provided herein, notifications to or communications with EPA

or the Department of Justice shall be deemed submitted on the date they are postmarked and sent

either by overnight receipt mail service or by certified or registered mail, return receipt requested.

71.     Unless this Consent Decree states otherwise, all notices, submissions, or

communications in connection with this Consent Decree shall be made in writing and addressed

as follows:

As to the United States:

> As to the Department of Justice:

>> Via the U.S. Postal Service:

>> Chief, Environmental Enforcement Section
>> Environment and Natural Resources Division
>> U.S. Department of Justice
>> P.O. Box 7611
>> Ben Franklin Station
>> Washington, DC 20044
>> (Reference: DOJ Case No. 90-5-2-1-08620)
>> Via Courier:

>> Chief, Environmental Enforcement Section
>> Environment and Natural Resources Division
>> U.S. Department of Justice
>> ENRD Mailroom, Rm. 2121
>> 601 D Street, NW
>> Washington, DC 20004

> As to U.S. EPA:

>> Director, Special Litigation and Projects Division
>> Office of Civil Enforcement
>> Office of Enforcement and Compliance Assurance
>> U.S. Environmental Protection Agency
>> Mail Code 2248-A
>> 1200 Pennsylvania Avenue, N.W.
>> Washington D.C.  20460

33

As to U.S. EPA Region 5:

Chief, Air Enforcement and Compliance Assurance Branch
Air and Radiation Division, AE-17J
U.S. EPA, Region V
77 West Jackson Boulevard
Chicago, Illinois 60604-3590

Deborah Garber
Associate Regional Counsel
Office of Regional Counsel (C-14J)
U.S. EPA, Region V
77 West Jackson Boulevard
Chicago, Illinois 60604-3590

As to U.S. EPA Region 10:

John Keenan
U.S. EPA REGION 10
1200 Sixth Avenue (OCE-127)
Seattle, WA 98101

As to the Defendant:

Thomas J. Snyder, President
Silgan Containers LLC
21800 Oxnard Street, Suite 600
Woodland Hills, CA 91367

Daniel M. Carson, Esq.
Silgan Containers LLC
21800 Oxnard Street, Suite 600
Woodland Hills, CA 91367

Dennis Cornish
Silgan Containers LLC
45 East Third Avenue
Toppenish, WA 98948

Steven A. Herman, Esq.
Beveridge & Diamond PC
1350 I Street, N.W.
Suite 700
Washington, DC 20005-3311

34

## XVI. EFFECT OF SHUTDOWN

72.    a.    For all Facilities, except Oconomowoc, the permanent shutdown of a unit or Facility and the surrender or modification of all permits for that unit or Facility will be deemed to satisfy all requirements of this Consent Decree applicable to that unit or Facility on and after the later of: (i) the date of the shutdown of the unit or Facility; or (ii) the date of the surrender or modification of all permits for the unit or Facility.

b.    After the Defendant implements the requirements of Paragraphs 13 and 21.b that are applicable to the Oconomowoc Facility, the permanent shutdown of can line Nos. 3, 4, or 5 or any other unit at the Oconomowoc Facility or the permanent shutdown of the Oconomowoc Facility and the surrender or modification of all permits for such line(s) or Facility will be deemed to satisfy all requirements of this Consent Decree applicable to such line(s) or acility on and after the later of: (i) the date of the shutdown of the line(s) or Facility; or (ii) the date of the surrender or modification of all permits for the line(s) or Facility.

## XVII. EFFECTIVE DATE

73.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

35

## XVIII.  **RETENTION OF JURISDICTION**

74.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI (Dispute Resolution) and XIX (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XIX.  **MODIFICATION**

75.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

76.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 53, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XX.  **TERMINATION**

77.     This Consent Decree may not be terminated in whole until such time as Defendant demonstrates that:

a.     Defendant has successfully installed and commenced operation of all powder side-seam coating lines pursuant to Paragraph 13.a. through 13.b., as required by this Decree;

36

b. Defendant either has applied for and obtained federally enforceable CAA permit(s) in accordance with and containing the provisions required by Paragraph 14.a. through 14.b. of this Decree, or, subsequent to the satisfaction of the requirements of Paragraph 13, has ceased operation of the related units or Facility subject to Paragraphs 14.a. through 14.b. in accordance with Section XVI (Effect of Shutdown) and has surrendered or modified all permits of such related units or Facility;

c. Defendant either has demonstrated compliance with the emission limits in Paragraph 13.a. of this Consent Decree for at least 730 consecutive days, or, subsequent to the satisfaction of the requirements of Paragraph 13, has ceased operation of the related units or Facility subject to Paragraph 13.a. in accordance with Section XVI (Effect of Shutdown) and has surrendered or modified all permits of such related units or Facility;

d. Defendant either has applied for and obtained a final non-Title V permit as required by Paragraph 16 that includes as enforceable permit terms all of the performance and other requirements under Section VI (Compliance), or has ceased operation of the related units or Facility subject to Paragraph 72 in accordance with Section XVI (Effect of Shutdown) and has surrendered or modified all permits of such related units or Facility;

e. Defendant has retired and transferred ownership of emission reduction credits required by Paragraph 20;

f. Defendant has satisfied the permitting requirements of Paragraphs 15 and 18 and 21 and the reporting requirement of Paragraphs 22, 24 and 26;

g. Defendant has satisfied all penalty provisions of this Consent Decree, as set forth in Sections V (Civil Penalty) and IX (Stipulated Penalties) of the Decree; and

37

h.　　　Defendant has otherwise complied with every other material obligation of this Consent Decree.

78.　　a.　　At such time as Defendant believes that termination of the Consent Decree is appropriate, Defendant shall submit to EPA and the United States, for review and approval, a request for termination containing a certification that Defendant has satisfied the requirements set forth in Paragraph 77.a.-h.

b.　　The Parties shall confer informally concerning the request for termination and any disagreement that the Parties may have as to whether, as applicable, the Defendant has satisfactorily complied with all the requirements of the Consent Decree termination in Paragraph 77.a.-h. If the United States and EPA agree that the Consent Decree should be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree within sixty (60) days of the United States' receipt of the request. If the United States and EPA do not agree that the Consent Decree should be terminated, the Defendant may invoke Dispute Resolution under Section XI of this Decree. However, the Defendant shall not seek Dispute Resolution of any dispute relating to termination, unless the United States formally advises Defendant that it does not concur in the proposed termination within the sixty (60) day time period.

79.　　Partial Termination. Defendant may request termination of this Consent Decree as it applies to a Facility, as follows:

a.　　At such time as Defendant believes that termination of the Consent Decree as to a Facility is appropriate, Defendant shall submit to EPA and the United States, for review and approval, a request for termination containing a certification that Defendant has: (i) satisfied

38

the Paragraph 77.a.-h. requirements that are applicable to the Facility; and (ii) fulfilled any other material requirements imposed on Defendant at that Facility by this Consent Decree.

b. The Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether, as applicable, the Defendant has satisfactorily complied with all the requirements of Paragraph 77.a.-h. at the Facility. If the United States and EPA agree that the requirements of the Decree as to the involved can line may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree as it applies to the Facility in question within sixty (60) days of the United States' receipt of the request. If the United States and EPA do not agree that the Consent Decree should be so terminated, the Defendant may invoke Dispute Resolution under Section XI of this Decree. However, the Defendant shall not seek Dispute Resolution of any dispute relating to such termination, unless the United States formally advises Defendant that it does not concur in the proposed partial termination within the sixty (60) day time period.

## XXI. PUBLIC PARTICIPATION

80. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

39

## XXII.  INTEGRATION/APPENDICES

81.      This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersede all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

82.      The following appendices are attached to and incorporated into this Consent Decree:

Appendix I:    Instructions and Application for Retirement of Emission Reduction Credits in San Joaquin County, CA.

Appendix II:  Summary of Disclosures

## XXIII.  SIGNATORIES/SERVICE

83.      Each undersigned representative of Defendant, EPA and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

84.      This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. The

40

Parties agree that the Defendant need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

85.     The Defendant shall identify, on the attached signature pages, the name, address and telephone number of an agent who is authorized to accept service or process by mail on behalf of the Defendant with respect to all matters arising under or relating to this Consent Decree.

### XXIV.  FINAL JUDGMENT

86.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court between the United States and the Defendant.

87.     The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED this ___2___ day of _____, 2010.

_____
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF WISCONSIN

Judgment entered this 2nd day of August, 2010.

JON W. SANFILIPPO, Clerk of Court

by:  s/ Linda M. Zik
     Deputy Clerk

41

WE HEREBY CONSENT to the entry of the Consent Decree in the *United States v. Silgan Containers LLC*, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR PLAINTIFF UNITED STATES OF AMERICA:

FOR THE UNITED STATES DEPARTMENT OF JUSTICE

IGNACIA S. MORENO
Assistant Attorney General
Environmental Enforcement Section

Date: 5/31/10

GREGORY L. SUKYS
Senior Attorney
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Tel. (202) 514-2068
Fax. (202) 616-6584

Date: 6/9/10

42

WE HEREBY CONSENT to the entry of the Consent Decree in the *United States v. Silgan Containers LLC*, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR PLAINTIFF UNITED STATES OF AMERICA:

FOR THE UNITED STATES DEPARTMENT OF JUSTICE

JAMES L. SANTELLE
United States Attorney
SUSAN M. KNEPEL
Assistant United States Attorney
Wisconsin State Bar # 1016482
530 Federal Courthouse
517 E. Wisconsin Avenue
Milwaukee, WI 53202
Tele. No. 414/297-1723
Fax No. 414/297-4394
susan.knepel@usdoj.gov

Date: June 10, 2010

43

WE HEREBY CONSENT to the entry of the Consent Decree in the *United States v. Silgan Containers LLC*, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF ENVIRONMENTAL PROTECTION AGENCY:

DATE: 4/20/10

ADAM M. KUSHNER
Office Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

DATE: 4-20-10

BERNADETTE RAPPOLD
Division Director
Special Litigation and Projects Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

DATE: 3-31-10

PETER W. MOORE, ESQ.
Special Litigation and Projects Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

DATE: 3-31-10

JEANNE M. DUROSS, ESQ.
Special Litigation and Projects Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

44

WE HEREBY CONSENT to the entry of the Consent Decree in the *United States v. Silgan Containers LLC*, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR DEFENDANT, SILGAN CONTAINERS LLC:

Date: 3/30/10

DANIEL M. CARSON, ESQ.
Silgan Containers LLC
21800 Oxnard Street, Suite 600
Woodland Hills, CA 91367

The following is the name and address of Defendant Silgan Containers LLC agent for service of Process:

STEVEN A. HERMAN, ESQ.
Beveridge & Diamond, P.C.
1350 I Street, NW
Suite 700
Washington, DC 20005-3311
(202) 789-6060

45

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. _____ |
| SILGAN CONTAINERS | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CONSENT DECREE

## APPENDIX I

## INSTRUCTIONS AND APPLICATION FOR RETIREMENT OF EMISSION REDUCTION CREDITS IN SAN JOAQUIN COUNTY, CA

## APPLICATION FOR
## EMISSION REDUCTION CREDIT BANKING

### TRANSFER OF OWNERSHIP, NAME CHANGE, OR WITHDRAWAL

#### -INSTRUCTIONS-

A. Indicate whether the application is for an Emission Reduction Credit Certificate (ERC) Transfer of Ownership, Name Change of Business to be listed on ERC's, Withdrawal, or Transfer of Ownership and Withdrawal by marking the appropriate box.

B. A nonrefundable fee of $71 is required per submitted certificate. Checks or money orders shall be made payable to the SJVAPCD.

C. Submit original ERC certificate(s) with application.

D. Line 1. Indicate the name of the owner that will hold title to the Certificate exactly as it should appear on the ERC Certificate.

E. Line 2. If the application is for Transfer of Ownership, provide mailing address of the new owner. ERC Certificates may be picked up in person or else will be delivered by registered mail to the current owner unless otherwise specified in writing by the current owner.

F. Line 3. List the name of the current owner of certificates being submitted for Transfer of Ownership, Name Change, or Withdrawal.

G. Line 4. List the mailing address of the current owner where correspondence regarding the application, billing for fees, and re-issued certificates for Name Change and partial Transfer of Ownership may be sent.

H. Line 5. List the applicable ERC Certificate number(s) being submitted.

I. Line 6. If application is for Withdrawal, list the Authorities to Construct to be offset by withdrawn ERCs.

J. Line 7. For partial Withdrawal or Transfer of Ownership of ERC certificates, identify the applicable certificates and indicate the quantities of emission reduction credits requested to be withdrawn or transferred in pounds per calendar quarter from each certificate submitted. Use a separate or additional sheets if necessary.

K. Line 8. For ERC Transfer of Ownership, indicate the selling price of ERCs to be used as offsets, in dollars per ton. If the price for the same pollutant is different for different quarters, indicate all prices and the applicable quarters.

1

rev Jan 2009

L. Line 9. Signature in ink and title of officer or authorized employee of the current owner. If application is submitted by a person other than the current owner, the application must include signed letter of release from current owner (included with application form).

M. Line 10. Type or print the name of the person signing as the applicant. Indicate the date and the daytime telephone number of the applicant.

N. Line 11. Type or print the name of the company employing the person signing as the applicant. Include a fax number and e-mail address (optional) for correspondence.

O. Applications may be submitted either by mail or in person at the following locations:

　　1. **Northern Regional Office** (San Joaquin, Stanislaus, and Merced Counties):

> 4800 Enterprise Way
> Modesto, CA 95356
> (209) 557-6400
> FAX: (209) 557-6475
> **SBA Hotline: (209) 557-6446**

　　2. **Central Regional Office** (Madera, Fresno, and Kings Counties):

> 1990 East Gettysburg Avenue
> Fresno, CA 93726
> (559) 230-5900
> FAX: (559) 230-6061
> **SBA Hotline: (559) 230-5888**

　　3. **Southern Regional Office** (Tulare and Kern Counties):

> 34946 Flyover Court
> Bakersfield, CA 93308
> (661) 392-5500
> FAX: (661) 392-5585
> **SBA Hotline: (661) 392-5665**

2                                          rev Jan 2009

# San Joaquin Valley Air Pollution Control District

## Application for
## ERC Transfer of Ownership

[ ] ERC TRANSFER OF OWNERSHIP
[ ] ERC WITHDRAWAL

[ ] NAME CHANGE ONLY (No change in ERC ownership has occurred)
[ ] ERC TRANSFER OF OWNERSHIP & WITHDRAWAL

| | |
|---|---|
| 1. ERC TO BE ISSUED TO: | Facility ID: __-____ (if known) |
| 2. MAILING ADDRESS: Street/P.O. Box: | |
| City: _____ State: _____ Zip Code: _____ | |
| 3. CURRENT OWNER: | Facility ID: __-____ (if known) |
| 4. MAILING ADDRESS: Street/P.O. Box: | |
| City: _____ State: _____ Zip Code: _____ | |
| 5. EXISTING ERC NO(S): | |
| 6. If withdrawing ERCs, list Permit units being offset: | |

7. REQUESTED ERCs (In Pounds Per Calendar Quarter):

| | VOC | NOx | CO | PM10 | SOx | OTHER |
|---|---|---|---|---|---|---|
| 1ST QUARTER | | | | | | |
| 2ND QUARTER | | | | | | |
| 3RD QUARTER | | | | | | |
| 4TH QUARTER | | | | | | |

8. FOR ERC T/O APPLICATIONS ONLY, LIST THE COST OF ERCs PROPOSED TO BE USED AS OFFSETS, (In Dollars Per Ton):

VOC: _____       CO: _____       SOx: _____
NOx: _____       PM10: _____     Other: _____       (Use additional sheets if necessary)

| 9. SIGNATURE OF APPLICANT (FOR CURRENT OWNER): | TYPE OR PRINT TITLE OF APPLICANT: | |
|---|---|---|
| 10. TYPE OR PRINT NAME OF APPLICANT: | DATE: | TELEPHONE NO: |
| 11. COMPANY EMPLOYING APPLICANT: | FAX NO: | E-MAIL: |

FOR APCD USE ONLY:

| DATE STAMP | FILING FEE RECEIVED: $_____ /_____ |
|---|---|
| | DATE PAID: |
| | PROJECT NO.: _____ FACILITY ID: _____ |

Northern Regional Office * 4800 Enterprise Way * Modesto, California 95356-8718 * (209) 557-6400 * FAX (209) 557-6475
Central Regional Office * 1990 East Gettysburg Avenue * Fresno, California 93726-0244 * (559) 230-5900 * FAX (559) 230-6061
Southern Regional Office * 34946 Flyover Court * Bakersfield, California 93308 * (661) 392-5500 * FAX (661) 392-5585

**TRANSFER OF OWNERSHIP ERC**
**LETTER OF RELEASE**

______________________________, as current holder of record of
(Selling Company Name)
Emission Reduction Credit (ERC) banking certificates (as listed below) issued by the San Joaquin Valley Air Pollution Control District (SJVAPCD), hereby releases all rights of ownership, in whole or in part, as described in the accompanying application, of the below listed ERCs to:

______________________________________________
(Acquiring Company Name)

as of ______________________.
(Date of Sale)

**CERTIFICATE NUMBER(S)**

______________________ ______________________
______________________ ______________________
______________________ ______________________
______________________ ______________________
______________________ ______________________

(Use Additional Sheets if Necessary)

**Signed:** ______________________ **Date:** ______________

**Name (Print):** ______________________ **Title:**

**Company Name:** ______________________________

**Acquiring Company Contact Name:** **Telephone:**

______________________ ______________________

**Address:**

______________________
______________________
______________________
______________________

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| SILGAN CONTAINERS LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

CONSENT DECREE

APPENDIX II

Summary of Disclosures

## Appendix II - Summary of Disclosures

| Facility | Nature of Violation | Statutory Cite | Reg Cite Federal | Reg Cite State (and permit no.) |
|---|---|---|---|---|
| Edison, NJ | ANC and Silgan failed to comply with the minimum destruction/removal control efficiencies for an oxidizer in violation of its permits | 42 U.S.C. §7401(a) | 40 CFR §52.1570 | New Jersey Administrative Code (NJAC) 7:27-8.3(e) |
| | In 1990, ANC modified a D&I line without NSR-required LAER | 42 U.S.C. §7401(a) | 40 CFR §52.1570 | NJAC 7:27-18(c)(1) |
| Lyons, NY | Silgan and its predecessor may have periodically failed to comply with operational limits for coating lines and 3-piece can lines, in violation of their permits | 42 U.S.C. §7401(a) | 40 CFR §52.1670 | 6 New York Codes, Rules and Regulations (NYCRR) 201-6.5 (Permit Nos. 542801-0011-00022, -0032, -00043) |
| | Silgan's predecessor failed to provide notice to the state before adding outside spray capability on the 3-piece lines in 1995 | Not Federally Enforceable | Not SIP Approved | 6 NYCRR 201-1.2 |
| | Silgan failed to maintain a conspicuous summary of proper operating procedures for two parts washers and failed to meet control system/freeboard ration requirements for one parts washer | 42 U.S.C. §7401(a) | 40 CFR §52.1670 | 6 NYCRR 226.2 and 226.3 |
| Maxton, NC | Silgan's predecessor failed to obtain a state construction permit for installation of a draw/redraw can line | 42 U.S.C. §7401(a) | 40 CFR §52.1770 | 15A North Carolina Administrative Code (NCAC) 2Q.0301 |
| | Silgan's predecessor failed to obtain a state construction permit for installation of an ink dot system on the D&I line in 1997 | 42 U.S.C. §7401(a) | 40 CFR §52.1770 | 15A NCAC 2Q.0301 |
| | Campbell failed to obtain a state construction permit for physical changes to the D&I line in 1998 | 42 U.S.C. §7401(a) | 40 CFR §52.1770 | 15A NCAC 2Q.0301 |

## Appendix II - Summary of Disclosures

| Facility | Nature of Violations | Statutory Cite | Reg. Cite - Federal | Reg. Cite - State (and permit no.) |
|---|---|---|---|---|
| | Silgan failed to submit quarterly reports of the total facility monthly VOC emissions and the running 12-mnth total VOC emission for several years, in violation of its Title V permit. | 42 U.S.C. §7661a(a) | 40 CFR §71.12 | 15A NCAC 2Q.0501, et. Seq. (Title V Permit No. 08693T02) |
| Tarrant, AL | Sheet Coater Line C1 and Lithography/Coater Line P2 were constructed by Silgan's predecessors in late 1970s to early 1980s without NSR-required LAER | 42 U.S.C. §7501 | 40 CFR §51.165 | Alabama Department of Environmental Management Administrative Code (ADEM Admin. Code) R.335-3-14.05 |
| | In 1993-1994, Kraft installed a continuous sheet feeder system on Lines C2, P1 and P2 without LAER | 42 U.S.C. §7501 | 40 CFR §51.165 | ADEM Admin. Code. Code. R. 335-3-14-.05; JCDH Rule 2.5 |
| | Silgan's predecessor failed to obtain permits or conduct source testing when it installed a new stack and afterburner system on Line C2 in 1990. | 42 U.S.C. §7401(a) | 40 CFR §52.50 | ADEM Admin. Code. Code. R. 335-3-14-.01; JCDH Rule 2.1 |
| | Silgan's predecessor intermittently operated Lines P2 and C1 roll coaters without RACT | 42 U.S.C. §7401(a) | 40 CFR §52.50 | ADEM Admin. Code. Code. R. 335-3-14-.01, 335-3-6-.32; JCDH Rule 2.1, 8.11 |
| | Silgan failed to demonstrate compliance with RACT limits; had not installed a permanent enclosure around the Line C2 roll applicator, and had not determined capture efficiency of the line C2 VOC control | 42 U.S.C. §7661a(a) | 40 CFR §71.12 | Title V Permit No. 407-0135-02 |

## Appendix II - Summary of Disclosures

| Facility Location | Nature of Violation | Statutory Cite | Reg Cite - Federal | Reg Cite - State (and permit(s)) |
|---|---|---|---|---|
| | system, in violations of its Title V permit. | | | |
| **Menomonie Falls, WI** | Silgan upgraded a can line welder without undergoing NSR review | 42 U.S.C. §7501 | 40 CFR §51 Subpart I, Appendix S | Wisconsin Administrative Code (WAC) NR 408.03, WAC NR 406.03 |
| | Silgan upgraded a can line welder without obtaining a state construction permit | Not Federally Enforceable | Not SIP Approved | WAC NR 406.03 |
| | Silgan failed to maintain temperature information and calibration records for the facility oxidizers | 42 U.S.C. §7401(a) | 40 CFR §52.2569 | WAC NR 439.055 |
| | Silgan failed to implement an episode emission control action program | 42 U.S.C. §7401(a) | 40 CFR §52.2569 | WAC NR 493.04 |
| | Silgan failed to maintain a conspicuous label or sign displaying operating requirements for one parts washer tank in 2001 | 42 U.S.C. §7401(a) | 40 CFR §52.2569 | WAC NR 423.03 |
| | Silgan exceeded permitted clean-up solvent usage limits in violation of its Title V permit. | 42 U.S.C. §7661a(a) | 40 CFR §71.12 | WAC NR 407 (Permit No. 268008400-P01) |
| **Menomonie, WI** | Silgan's predecessor operated an end line in 1989 without obtaining an operating permit | Not Federally Enforceable | Not SIP Approved | WI Admin. Code NR 407.04 |
| | Silgan's predecessor installed a new end line in 1990 without obtaining a construction permit | Not Federally Enforceable | Not SIP Approved | WAC NR 406.03 |
| | Silgan's predecessor installed a 3-piece can line in 1991 without obtaining a state permit to construct. | Not Federally Enforceable | Not SIP Approved | WAC NR 406.03 |

## Appendix II - Summary of Disclosures

| Facility | Nature of Violation | Statutory Cite | Reg. Cite Federal | Reg. Cite - State (and permit no.) |
|---|---|---|---|---|
| | Silgan modified end line no 502/602 in 1998 without obtaining a state construction permit | 42 U.S.C. §7401(a) | 40 CFR §52.2569 | WAC NR 406.03 |
| | Silgan modified the post-coater spray system in 1994 without obtaining a state construction permit | Not Federally Enforceable | Not SIP Approved | WAC NR 406.03 |
| | Silgan modified the post-coater spray system in 2000 without obtaining a state construction permit | 42 U.S.C. §7401(a) | 40 CFR §52.2569 | WAC NR 406.03 |
| | Silgan exceeded ink usage limits in violation of its Title V permit | 42 U.S.C. §7661a(a) | 40 CFR §71.12 | WAC NR 407 (Permit No. 617043350-P01) |
| Oconomowoc, WI | Silgan upgraded welders on 3 can lines without undergoing NSR review | 42 U.S.C. §7501 | 40 CFR §51 Subpart I, Appendix S | WAC NR 408.03 |
| | Silgan failed to obtain a state construction permit for the replacement of a soldered can line with a welded can line in 1990. | Not Federally Enforceable | Not SIP Approved | WAC NR 406.03 |
| | Silgan upgraded the welders on lines 3,4, and 5 in 1992 without obtaining a state construction permit | Not Federally Enforceable | Not SIP Approved | WAC NR 406.03 |
| | Silgan installed outside side seam striping capability on lines 1 and 4 in 1993-1994 without obtaining a state construction permit | Not Federally Enforceable | Not SIP Approved | WAC NR 406.03 |
| Benton Harbor, MI | Silgan exceeded its maximum monthly stripe usage limit in 2, 3, and 9 2000 in violation of its permit | 42 U.S.C. §7401(a) | 40 CFR §52.1170 | Michigan Air Pollution Control Rule (APCR) Section 336.1602 |
| Broadview, IL | Silgan operated the printing operation without obtaining a state operating permit | 42 U.S.C. §7401(a) | 40 CFR §52.720 | 35 Illinois Administrative Code (IAC) R. 201.144 |

## Appendix II - Summary of Disclosures

| Facility | Nature of Violation | Statutory Cite | Reg. Cite (Fed/Fal.) | Key Cite, State (and permit no.) |
|---|---|---|---|---|
| Rochelle, IL | Silgan failed to obtain a state construction permit for physical changes to the sheet coater in 1997. | 42 U.S.C. §7401(a) | 40 CFR §52.720 | 35 IAC R. 201.142 |
| St. Paul, MN | Silgan received at least one shipment of fuel oil with sulfur content <1.5%, instead on <1% in violation of the Title V operating permit | 42 U.S.C. §7661a(a) | 40 CFR §71.12 | Minnesota Air Quality Rule (MAQR) 7007.0800 (Permit No. 12300021-001) |
| | Silgan failed to maintain an operation and maintenance plan for the tin solder line cyclones in violation of its Title V operating permit. | 42 U.S.C. §7661a(a) | 40 CFR §71.12 | MAQR 7007.0800 (Permit No. 12300021-001) |
| Plover, WI | Silgan's predecessor modified the D&I line in 1990-91 without obtaining a state construction permit | Not Federally Enforceable | Not SIP Approved | WAC NR 406.03 |
| | Silgan's predecessor modified the D&I line in 1993 without obtaining a state construction permit | Not Federally Enforceable | Not SIP Approved | WAC NR 406.03 |
| Hammond, IN | Silgan used a new coating once in 2000 and 2001 without requesting approval, in violation of the facility's Title V permit. | 42 U.S.C. §7661a(a) | 40 CFR §71.12 | 326 Indiana Administrative Code (IAC) 2 (Construction Permit No. CP-089-01761, Title V Permit No. T089-6900-00202 (2001) |
| St. Joseph, MO | Silgan modified a D&I line without installing PSD-required BACT | 42 U.S.C. §7475(a)(1) | 40 CFR §52.21(a)(2)(iii) | Missouri Department of Natural Resources (MDNR) PSD Rules 10 Code of State Regulations (CSR) 10.060(8) |
| | Silgan installed an aluminum end line without PSD -required | 42 U.S.C. §7475(a)(1) | 40 CFR §52.21(a)(2)(iii) | MDNR PSD Rules 10 CSR 10.060(8) |

## Appendix II - Summary of Disclosures

| Facility | Nature of Violation | Statutory Cite | Reg Cite Federal | Reg Cite State (and permit no.) |
|---|---|---|---|---|
| | BACT | | | |
| | Silgan modified the D&I line when it upgraded the cupper drive, clutch and brake assembly without installing PSD-required BACT | 42 U.S.C. §7475(a)(1) | 40 CFR §52.21(a)(2)(iii) | MDNR PSD Rules 10 CSR 10.060(8) |
| | Silgan modified the D&I line by replacing two trimmers without installing PSD-required BACT | 42 U.S.C. §7475(a)(1) | 40 CFR §52.21(a)(2)(iii) | MDNR PSD Rules 10 CSR 10.060(8) |
| | Silgan under reported VOC emissions data and fees submitted to the state | 42 U.S.C. §7401(a) | 40 CFR §52.1320 | MDNR Rule 10 CSR 10-6.110 |
| | Silgan failed to obtain *de minimis* permits for several minor changes in 1991, 1994-5, 1996, 1998, and 1998-9. | 42 U.S.C. §7401(a) | 40 CFR §52.1320 | MDNR Rule 10 CSR 10-6.060 |
| Ft. Dodge, IA | Silgan exceed its VOC limit in 1989-91 in violations of its permits | 42 U.S.C. §7401(a) | 40 CFR §52.820 | Iowa Administrative Code (IAC) 567-21.1 |
| | Silgan made changes to conversion presses to reduce maintenance downtime without first confirming with IDNR that the project was exempt from construction permit requirements. | 42 U.S.C. §7401(a) | 40 CFR §52.820 | IAC 567-22.1(2) |
| | Silgan used misting spray material with a VOC content over 6.0 lb/gal, in violation of its Title V operating permit | 42 U.S.C. §7661a(a) | 40 CFR §71.12 | IAC 567-22.105 (Permit No.00-TV-035) |

## Appendix II - Summary of Disclosures

| Facility | Nature of Violation | Statutory Cite | Reg Cite Federal | Reg Cite State (and permit no.) |
|---|---|---|---|---|
| Mt. Vernon, MO | Silgan modified Can Line No. 1 in 1998 w/out obtaining a *de minimis* permit. | 42 U.S.C. §7401(a) | 40 CFR §52.1320 | 10 CSR 10.060 |
| | Silgan failed to account for use of solvent-based lubricants in the annual Emissions Inventory Questionnaires submitted to the MDNR. | 42 U.S.C. §7401(a) | 40 CFR §52.1320 | 10 CSR 10-6.110 |
| Toppenish, WA | Silgan installed two 3-piece can lines in 1996 and triggered federal PSD requirements. | 42 U.S.C. §7475(a)(1) | 40 CFR §52.21(a)(2)(iii) | Not Applicable |